```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARSHALL CHATMON,

                          Plaintiff,

       -against-

POLICE OFFICER RIOS, POLICE OFFICER            REPORT AND
CASTELLI, POLICE OFFICER HALEY,                RECOMMENDATION
POLICE OFFICER SANTOBELLO,
TOMMY ANNUNZIATO (PVB Meter Officer),          02 Civ. 6238 (SCR) (GAY)
CITY OF YONKERS, CITY OF YONKERS
POLICE DEPARTMENT[1]

                          Defendants.
------------------------------------------------------------X
```

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff Marshall Chatmon alleges that he was subjected to excessive use of force by Yonkers Police Department police officers Felix Rios, Brian Haley, Vincent Castelli, Robert Santobello and Yonkers Parking Violation Bureau (PVB) enforcement officer Thomas Annunziato during plaintiff's arrest on March 22, 2002. Presently before this Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, I respectfully recommend that defendants' motion for summary judgment be granted in part and denied in part.

---

[1] Spelling errors in the caption have been corrected.

## I. BACKGROUND

The following undisputed facts are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.

On or about March 22, 2002, at 6:00 a.m., Chatmon discovered that his vehicle was being towed by Mr. Clay Rumley of Transit Tow for scofflaw violations including unpaid parking tickets. Defendant Thomas Annunziato, a Yonkers PVB enforcement officer, was also present at the scene.

Chatmon approached Rumley and stated that the towing order was erroneous and explained that he had to go to work. Chatmon then entered the tow truck and drove it away with his vehicle attached. As plaintiff drove the truck, his vehicle damaged three parked vehicles before it eventually broke loose. Annunziato notified the police department about the stolen truck and followed Chatmon. A patrol car also followed Chatmon to Downing Street where he exited the tow truck and then ran off on foot. Defendants Rios, Castelli, Haley and Santobello apprehended plaintiff on the roof of 117 Stanley Avenue and placed him under arrest.

Chatmon contends that he was subjected to excessive force by the individual dependants. He also alleges that the City of Yonkers and its Police Department are liable. All defendants now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must "'resolve all ambiguities and inferences . . . in the light most favorable to the party opposing the motion.'" Neratko v. Frank, 31 F. Supp. 2d 270, 278 (W.D.N.Y. 1998) (quoting Shockley v. Vermont State Colleges, 793 F.2d 478, 481 (2d Cir. 1986)). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Pleadings submitted by *pro se* plaintiffs may be held to "less stringent standards

than those applicable to formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the pro se plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" is afforded to *pro se* plaintiffs with regards to summary judgment motions). However, *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). See also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

## III. DISCUSSION

A.  City of Yonkers Police Department

Plaintiff has sued both the City of Yonkers and its Police Department. Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, New York law governs the capacity of a police department to sue or to be sued. "Under New York law, departments such as the [City of Yonkers] Police Department, which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Fanelli v. Town of Harrison, 46 F. Supp.2d 254, 257 (S.D.N.Y. 1999). Accordingly, I respectfully recommend that plaintiff's claims against the City of Yonkers Police Department should be dismissed.

B.  City of Yonkers

A municipality cannot be held liable under Section 1983 for the conduct of an employee solely on the basis of respondeat superior. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991). Instead, the municipal entity will be held responsible if the violation of the plaintiff's rights resulted from municipal custom or policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986); Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Liability may be imposed even if the policy or custom alleged is informal and not an explicitly adopted rule or regulation. See Sorlucci v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (citing Ricciuti, 941 F.2d at 122). However, mere assertions "that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

To defeat a motion for summary judgment, a plaintiff must do more than simply recite allegations of municipal liability; he must come forward with evidence that the municipality, alerted to the possible use of excessive force by its officers, did nothing to rectify the situation. Dwares, 985 F.2d 94 at 100. Here, the record is devoid of any evidence to support plaintiff's allegations that the City of Yonkers might have maintained or condoned a custom or practice of depriving persons of their constitutional rights. Accordingly, I respectfully recommend that plaintiff's motion for summary judgment as to the City of Yonkers should be granted.[2]

---

[2] As a matter of law, plaintiff's claims for punitive damages against the City of Yonkers should also be dismissed. Monell, 436 U.S. 658 at 662.

C.  Official Capacity Claims

Plaintiff has sued defendants Rios, Castelli, Haley, Santobello and Annunziato in their individual and official capacities. The Court recognizes that state officials sued in their official capacities are not "persons" within the meaning of Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 71 (1989); Yorktown Medical Lab. v. Perales, 948 F.2d 84, 87 n.1 (2d Cir. 1991). Moreover, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." Coon v. Town of Springfield, VT., 404 F.3d 683, 687 (2d Cir. 2005)(citation omitted). Accordingly, I respectfully recommend that the Court dismiss all of plaintiff's claims leveled against Rios, Castelli, Haley, Santobello and Annunziato in their official capacities.

D.  Parking Enforcement Officer Annunziato

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, *inter alia*, that the defendants caused the deprivation of plaintiff's rights. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998) (citing Monell, 436 U.S. 658 at 692). The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983: (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in

managing subordinates who caused the unlawful condition or event." Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, Chatmon claims in his notice of claim affirmation that Annunziato struck him in the head with a nightstick during the course of his arrest. (Ex. JJ to Bonanno Declaration). Chatmon also stated in his deposition that he wondered why the "meter maid" was up on the rooftop of 117 Stanley Avenue with the police and that Annunziato helped beat him up. (Ex. J to Bonanno Declaration at 121). Annunziato stated that he followed Chatmon while he was driving the tow truck towards Downing Street but that he was not present on the roof of 117 Stanley Avenue; and did not participate in the apprehension of plaintiff. (Ex. ZZ to Bonnano Declaration).

Defendant Annunziato's presence and role in Chatmon's arrest, if any, is a question of fact precluding summary judgment. Accordingly, I respectfully recommend that defendants' motion for summary judgment as to plaintiff's excessive force claim against Annunziato should be denied.

E.   Excessive Force Claims Against the Police Officers

The Fourth Amendment is the exclusive source of constitutional protection against excessive force claims arising out of an arrest. Graham v. Connor, 490 U.S. 386 (1989). Excessive force claims against law enforcement officers have to be analyzed under the objective reasonableness standard, focusing on totality of circumstances confronting the officers at time of arrest. Id. at 395. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97.

Violation of the plaintiff's Fourth Amendment rights are balanced against the government's interests. Id. at 396.

Moreover, a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).

Plaintiff and the defendant police officers Rios, Santobello, Castelli, and Haley present conflicting accounts of plaintiff's arrest. Plaintiff was fleeing from police officers and ultimately hid on the roof of 117 Stanley Avenue. Plaintiff contends that when the officers arrived he surrendered and was on one knee before he was "knocked unconscious" and subjected to excessive force. The police officers contend that the force used was reasonable. They assert that plaintiff was fleeing after having stolen the tow truck. The officers allege that when they found plaintiff, he charged at them and resisted arrest.

Chatmon contends that he was beaten by the officers and dragged to the middle of said rooftop. (Ex. J at 45, Ex. JJ to Bonnano Declaration). Chatmon testified at his deposition that officers Rios and Santobello held him down with knees on his stomach (Ex. J at 54).

Clearly, genuine issues of material fact remain which would preclude summary judgment including, but not limited to, whether plaintiff surrendered or resisted arrest; the extent of force used; the extent of the injuries suffered, and whether there was a duty to intercede. It is for the finder of fact to assess plaintiff's account of what occurred during his arrest and any conflicting evidence by the defendants. "Credibility

assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 55-56 (2d Cir. 1997). Accordingly, I respectfully recommend that defendants' motion for summary judgment be denied as to plaintiff's excessive force claims against the police officers.

F.     Qualified Immunity

Defendants argue that they are entitled to summary judgment on plaintiff's excessive force claims based upon the defense of qualified immunity. The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003). In this case, the question is whether defendants' actions during Chatmon's arrest were "objectively reasonable" in light of the circumstances.

As stated above, several genuine issues of material facts are still in dispute. "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant

is not entitled to judgment as a matter of law on a defense of qualified immunity." <u>Mickle v. Morin</u>, 297 F.3d 114, 122 (2d Cir. 2002). Accordingly, I respectfully recommend that defendants' summary judgment motion on the ground of qualified immunity should be denied.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (1) be granted in part, and the claims against the City of Yonkers and the City of Yonkers Police Department should be dismissed, and (2) denied in all other respects.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed.R.Civ.P. 6(e), or a total of thirteen (13) working days (<u>see</u> Fed.R.Civ.P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. <u>See</u> <u>Small v.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARSHALL CHATMON,



Plaintiff,

-against-

POLICE OFFICER RIOS, POLICE OFFICER
CASTELLI, POLICE OFFICER HALEY,
POLICE OFFICER SANTOBELLO,
TOMMY ANNUNZIATO (PVB Meter Officer),
CITY OF YONKERS, CITY OF YONKERS
POLICE DEPARTMENT[1]

**REPORT AND
RECOMMENDATION**

02 Civ. 6238 (SCR) (GAY)

Defendants.
------------------------------------------------------------X

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff Marshall Chatmon alleges that he was subjected to excessive use of force by Yonkers Police Department police officers Felix Rios, Brian Haley, Vincent Castelli, Robert Santobello and Yonkers Parking Violation Bureau (PVB) enforcement officer Thomas Annunziato during plaintiff's arrest on March 22, 2002. Presently before this Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, I respectfully recommend that defendants' motion for summary judgment be granted in part and denied in part.

---

[1]Spelling errors in the caption have been corrected.



## I. BACKGROUND

The following undisputed facts are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.

On or about March 22, 2002, at 6:00 a.m., Chatmon discovered that his vehicle was being towed by Mr. Clay Rumley of Transit Tow for scofflaw violations including unpaid parking tickets. Defendant Thomas Annunziato, a Yonkers PVB enforcement officer, was also present at the scene.

Chatmon approached Rumley and stated that the towing order was erroneous and explained that he had to go to work. Chatmon then entered the tow truck and drove it away with his vehicle attached. As plaintiff drove the truck, his vehicle damaged three parked vehicles before it eventually broke loose. Annunziato notified the police department about the stolen truck and followed Chatmon. A patrol car also followed Chatmon to Downing Street where he exited the tow truck and then ran off on foot. Defendants Rios, Castelli, Haley and Santobello apprehended plaintiff on the roof of 117 Stanley Avenue and placed him under arrest.

Chatmon contends that he was subjected to excessive force by the individual dependants. He also alleges that the City of Yonkers and its Police Department are liable. All defendants now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must "'resolve all ambiguities and inferences . . . in the light most favorable to the party opposing the motion.'" Neratko v. Frank, 31 F. Supp. 2d 270, 278 (W.D.N.Y. 1998) (quoting Shockley v. Vermont State Colleges, 793 F.2d 478, 481 (2d Cir. 1986)). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Pleadings submitted by *pro se* plaintiffs may be held to "less stringent standards

than those applicable to formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the pro se plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" is afforded to *pro se* plaintiffs with regards to summary judgment motions). However, *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). See also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

## III. DISCUSSION

A.  City of Yonkers Police Department

Plaintiff has sued both the City of Yonkers and its Police Department. Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, New York law governs the capacity of a police department to sue or to be sued. "Under New York law, departments such as the [City of Yonkers] Police Department, which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Fanelli v. Town of Harrison, 46 F. Supp.2d 254, 257 (S.D.N.Y. 1999). Accordingly, I respectfully recommend that plaintiff's claims against the City of Yonkers Police Department should be dismissed.

B. City of Yonkers

A municipality cannot be held liable under Section 1983 for the conduct of an employee solely on the basis of respondeat superior. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991). Instead, the municipal entity will be held responsible if the violation of the plaintiff's rights resulted from municipal custom or policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986); Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Liability may be imposed even if the policy or custom alleged is informal and not an explicitly adopted rule or regulation. See Sorlucci v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (citing Ricciuti, 941 F.2d at 122). However, mere assertions "that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

To defeat a motion for summary judgment, a plaintiff must do more than simply recite allegations of municipal liability; he must come forward with evidence that the municipality, alerted to the possible use of excessive force by its officers, did nothing to rectify the situation. Dwares, 985 F.2d 94 at 100. Here, the record is devoid of any evidence to support plaintiff's allegations that the City of Yonkers might have maintained or condoned a custom or practice of depriving persons of their constitutional rights. Accordingly, I respectfully recommend that plaintiff's motion for summary judgment as to the City of Yonkers should be granted.[2]

---

[2] As a matter of law, plaintiff's claims for punitive damages against the City of Yonkers should also be dismissed. Monell, 436 U.S. 658 at 662.

C. <u>Official Capacity Claims</u>

Plaintiff has sued defendants Rios, Castelli, Haley, Santobello and Annunziato in their individual and official capacities. The Court recognizes that state officials sued in their official capacities are not "persons" within the meaning of Section 1983. See <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64, 71 (1989); <u>Yorktown Medical Lab. v. Perales</u>, 948 F.2d 84, 87 n.1 (2d Cir. 1991). Moreover, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." <u>Coon v. Town of Springfield, VT.</u>, 404 F.3d 683, 687 (2d Cir. 2005)(citation omitted). Accordingly, I respectfully recommend that the Court dismiss all of plaintiff's claims leveled against Rios, Castelli, Haley, Santobello and Annunziato in their official capacities.

D. <u>Parking Enforcement Officer Annunziato</u>

In order to establish personal liability under 42 U.S.C. §1983, plaintiff must prove, *inter alia*, that the defendants caused the deprivation of plaintiff's rights. See <u>Taylor v. Brentwood Union Free Sch. Dist.</u>, 143 F.3d 679, 685 (2d Cir. 1998) (citing <u>Monell</u>, 436 U.S. 658 at 692). The Second Circuit has delineated several ways in which a defendant may be personally involved in a constitutional deprivation so as to be liable under §1983: (1) "[t]he defendant may have directly participated in the infraction"; (2) "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; (3) "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices continue"; (4) "a supervisory official may be personally liable if he or she was grossly negligent in

managing subordinates who caused the unlawful condition or event." <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, Chatmon claims in his notice of claim affirmation that Annunziato struck him in the head with a nightstick during the course of his arrest. (Ex. JJ to Bonanno Declaration). Chatmon also stated in his deposition that he wondered why the "meter maid" was up on the rooftop of 117 Stanley Avenue with the police and that Annunziato helped beat him up. (Ex. J to Bonanno Declaration at 121). Annunziato stated that he followed Chatmon while he was driving the tow truck towards Downing Street but that he was not present on the roof of 117 Stanley Avenue; and did not participate in the apprehension of plaintiff. (Ex. ZZ to Bonnano Declaration).

Defendant Annunziato's presence and role in Chatmon's arrest, if any, is a question of fact precluding summary judgment. Accordingly, I respectfully recommend that defendants' motion for summary judgment as to plaintiff's excessive force claim against Annunziato should be denied.

E. <u>Excessive Force Claims Against the Police Officers</u>

The Fourth Amendment is the exclusive source of constitutional protection against excessive force claims arising out of an arrest. <u>Graham v. Connor</u>, 490 U.S. 386 (1989). Excessive force claims against law enforcement officers have to be analyzed under the objective reasonableness standard, focusing on totality of circumstances confronting the officers at time of arrest. <u>Id.</u> at 395. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." <u>Id.</u> at

396-97. Violation of the plaintiff's Fourth Amendment rights are balanced against the government's interests. Id. at 396.

Moreover, a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).

Plaintiff and the defendant police officers Rios, Santobello, Castelli, and Haley present conflicting accounts of plaintiff's arrest. Plaintiff was fleeing from police officers and ultimately hid on the roof of 117 Stanley Avenue. Plaintiff contends that when the officers arrived he surrendered and was on one knee before he was "knocked unconscious" and subjected to excessive force. The police officers contend that the force used was reasonable. They assert that plaintiff was fleeing after having stolen the tow truck. The officers allege that when they found plaintiff, he charged at them and resisted arrest.

Chatmon contends that he was beaten by the officers and dragged to the middle of said rooftop. (Ex. J at 45, Ex. JJ to Bonnano Declaration). Chatmon testified at his deposition that officers Rios and Santobello held him down with knees on his stomach (Ex. J at 54).

Clearly, genuine issues of material fact remain which would preclude summary judgment including, but not limited to, whether plaintiff surrendered or resisted arrest; the extent of force used; the extent of the injuries suffered, and whether there was a duty to intercede. It is for the finder of fact to assess plaintiff's account of what occurred during his arrest and any conflicting evidence by the defendants. "Credibility

assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 55-56 (2d Cir. 1997). Accordingly, I respectfully recommend that defendants' motion for summary judgment be denied as to plaintiff's excessive force claims against the police officers.

F.   Qualified Immunity

Defendants argue that they are entitled to summary judgment on plaintiff's excessive force claims based upon the defense of qualified immunity. The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003). In this case, the question is whether defendants' actions during Chatmon's arrest were "objectively reasonable" in light of the circumstances.

As stated above, several genuine issues of material facts are still in dispute. "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant

is not entitled to judgment as a matter of law on a defense of qualified immunity." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). Accordingly, I respectfully recommend that defendants' summary judgment motion on the ground of qualified immunity should be denied.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (1) be granted in part, and the claims against the City of Yonkers and the City of Yonkers Police Department should be dismissed, and (2) denied in all other respects.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed.R.Civ.P. 6(e), or a total of thirteen (13) working days (see Fed.R.Civ.P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v.